UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NAJIB BABUL | : | Case No. 2:15-cv-02937-GAM |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| RELMADA THERAPEUTICS, INC. et al, | : | |
| | : | |
| Defendants. | : | |

**REPLY BRIEF OF DEFENDANTS,
ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C., DAVID C.
BURGER, AND DAVID E. DANOVICH,
<u>IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

Defendants, Robinson Brog Leinwand Greene Genovese & Gluck P.C., David C. Burger, and David E. Danovich (collectively, "Robinson Brog"), by and through their undersigned counsel, hereby submit this reply brief in further support of their Motion to Dismiss the Complaint of Plaintiff, Najib Babul ("Babul") pursuant to Fed. R.C.P. 12(b)(6).

**I.     INTRODUCTION**

Robinson Brog moves to dismiss Babul's Dragonetti claim because the Complaint and related documents unquestionably show that the Underlying Action was resolved by an agreement or compromise of the parties, which does not satisfy the favorable-termination requirement of Dragonetti claims. Specifically, the Stipulated Judgment which ended the Underlying Action effectuated a negotiated agreement by which judgment was *fully* granted in Babuls' favor on Relmada's claims, but only *partially* granted on Babul's counterclaims against Relmada. Thus, the clear compromise was that Babul got all that he wanted with respect to the claims asserted against him in exchange for less than what he was seeking with respect to his counterclaims. In light of this compromise, Pennsylvania law provides that the Underlying Action did not terminate in Babul's favor. As such, his Dragonetti claim cannot succeed.

1

In response, Babul makes three ill-fated arguments. First, he argues that the Stipulated Judgment was not a *settlement* because it gave Babul all the relief he was seeking in the Underlying Action.[1] Second, he argues that because his Complaint alleges that Stipulated Judgment "was not an agreement or compromise in the nature of a settlement," this Court must accept that as true at this stage of the proceedings.[2] Finally, he argues that the resolution of his counterclaims in the Underlying Action has no bearing on his current Dragonetti claim.[3] All of these arguments are wrong.

**First**, the Stipulated Judgment did *not* provide Babul with all that he was seeking in the Underlying Action. As a comparison of the pleadings in the Underlying Action, the Stipulated Judgment, and Babul's own allegations in his Complaint plainly shows, he asked for relief via his counterclaims that the Stipulated Judgment simply did not provide.

**Second**, while the word "settlement" may not appear in the title of the Stipulated Judgment, there is no question that the Stipulated Judgment is considered a settlement as a matter of law.

**Third**, even if the Stipulated Judgment were not considered a "settlement," that does not matter because it was still a negotiated "compromise" or "agreement" between Babul and Relmada to end the Underlying Action in a non-litigious manner. And that is *exactly* the type of underlying-case resolution that the law says fails to meet the favorable-termination requirement.

**Fourth**, despite what Babul argues in his response, he never alleged that the Stipulated Judgment was not an "agreement or compromise." And while he does allege that it was not a

---

[1]  *See,* Babul's Response Brief (Doc. 22), pp. 1 and 7-8.
[2]  *Id.* at p. 8.
[3]  *Id.* at p. 9.

"settlement,"[4] the Court need not accept that conclusory allegation as true, particularly as it is contradicted by the other allegations in the Complaint, and the Stipulated Judgment itself.[5]

**Finally**, while Babul may be correct that the focus of Dragonetti claims is typically on the claims asserted against the Dragonetti plaintiff, rather than any counterclaims, that does not mean, as he contends, that "the Dragonetti Act does not care about how [his] counterclaim in the underlying proceedings ended."[6] On the contrary, the resolution of his counterclaims is critical to the favorable-termination element of his Dragonetti claim because it was part of the agreement or compromise that ended the Underlying Action in a non-litigious manner.

## II.    REPLY ARGUMENTS

### A.    The Stipulated Judgment Did *Not* Provide Babul With All That He Was Seeking In The Underlying Action – It Was A Compromise.

Babul's argument that the Stipulated Judgment was not a settlement because it gave him all the relief he was seeking in the Underlying Action[7] is flat-out wrong. His Complaint and the documents that the Court may consider in ruling on Robinson Brog's Motion to Dismiss show that the Stipulated Judgment did *not* provide Babul the full relief he was seeking via his counterclaims.

**First**, a comparison of the relief that Babul sought via his counterclaims with the relief granted by the Stipulated Judgment makes clear that Babul did not get all that he was asking for. Babul sought the following relief via his counterclaims[8]:

---

[4]    *See, Babul's Complaint* (Exhibit A to Robinson Brog's Motion to Dismiss), ¶ 238.
[5]    *See, U.S. Claims, Inc. v. Flomenhaft & Cannata, LLC*, 519 F.Supp. 2d 515, 520 (E.D. Pa. 2006) (holding that a court need not "accept as true conclusory allegations contradicted by the documents underlying the complaint").
[6]    Babul's Response Brief (Doc. 22), p. 9.
[7]    *See,* Babul's Response Brief (Doc. 22), pp. 1 and 7-8.
[8]    *See, Babul's First Amended Answer and Counterclaims in the Underlying Action* (Exhibit C to Robinson Brog's Motion to Dismiss), Prayer for Relief, pp. 17-18.

3

1.  An Order (a) reinstating his warrant to purchase shares of Relmada's Common Stock (the "Warrant"), and (b) directing that Relmada specifically perform its obligations, permitting Babul to immediately exercise the Warrant[9];

2.  An award of damages that Babul incurred as a result of Relmada canceling the Warrant[10];

3.  A declaratory judgment that the Warrant does not violate certain law[11]; and

4.  Attorney's fees, costs, and other relief deemed just and proper.

The Stipulated Judgment, on the other hand, only provided Babul with the following relief:

1.  A direction that "Relmada [must] perform its contractual obligations under the Warrant … so that Babul may immediately exercise *50% of the warrant*…" (emphasis added);

2.  A direction that Relmada must "encourage … other parties … to permit Babul to immediately exercise the remaining 50% of the Warrant…"; and

3.  An award of costs taxed against Relmada.[12]

Thus, despite seeking damages related to Relmada's alleged improper canceling of the Warrant, Babul *never* received such damages; despite seeking an order allowing him to immediately exercise *100%* of the Warrant, he was only granted allowance in to immediately exercise *50%* of it; and despite seeking a declaratory judgment that the Warrant does not violate certain law, he *never* got such a declaration. All told, Babul only got *half* of specific performance he was seeking, *none* of the damages, and *none* of the declaratory relief.

**Second**, Babul's own Complaint in this matter also shows that he did not get all he was asking for. Specifically, his allegations about the negotiations concerning the Stipulated

---

[9]  *Id. See also* ¶ 41 (stating that Babul "seeks an order requiring Relmada to reinstate the Warrant and specifically perform its obligations under the Conversion Agreement to permit him to have the immediate right to exercise the Warrant").

[10] *Id. See also* ¶ 42 (stating that Babul "also seeks to recover any and all damages that he has incurred or will incur as a result of Relmada's breach of the Conversion Agreement and Warrant").

[11] *Id. See also* ¶¶ 44-54 (setting forth Babul's claim for (as stated in ¶ 48) "a declaration that the Conversion Agreement and Warrant did not violate Rule 3a4-1 [f the Securities and Exchange Act of 1934] and/or the 1934 Act").

[12] *See, Stipulated Judgment Order* (Exhibit D to Robinson Brog's Motion to Dismiss), ¶ 2.

4

Judgment make clear (1) that Relmada would not agree to his demand to be able to immediately exercise 100% of the warrant, and (2) that the parties ultimately compromised on that issue. Babul first introduces this "sticking point" in paragraph 240 of his Complaint:

> 240.    The final sticking point [of the negotiations] was Dr. Babul's request for language in the Stipulated Judgment Order providing that he could exercise the Warrant immediately, which was the specific relief sought in the counterclaims.[13]

Then, in the next paragraph (241), Babul describes Relmada's reasons for rejecting his demand to immediately exercise 100% of the Warrant:

> 241.    Relmada responded that it could not agree that the Warrant could be exercised immediately because half of the Warrant was subject to the Escrow Agreement to which Laidlaw was also a party and Relmada could not even ask Laidlaw for its views on the subject.[14]

In paragraphs 242 and 243, however, Babul then details why he believed Relmada's position on this point was wrong:

> 242.    Relmada's position was wrong, as Dr. Babul's counsel pointed out in a letter dated November 24, 2014, because the Escrow Agreement terminated of its own accord with the Share Exchange in May 2014.[15]
>
> 243.    Dr. Babul's counsel also noted that Laidlaw controlled Relmada through Seth, the lead director of Relmada, and Relmada should not have pretended that Laidlaw was an unrelated third party that could not be called on to agree that the Escrow Agreement obviously terminated as a result of the Share Exchange.[16]

Still, despite believing that Relmada was wrong in rejecting his demand to immediately exercise 100% of the Warrant, Babul alleges in paragraph 246 of his Complaint that he proposed a compromise – namely, that he be permitted to immediately exercise at least 50% of the warrant:

> 246.    Dr. Babul insisted that the Stipulated Judgment Order should at least provide he had the right to immediately exercise half of the Warrant.[17]

---

[13]    *See, Babul's Complaint* (Exhibit A to Robinson Brog's Motion to Dismiss), ¶ 240.
[14]    *Id.* at ¶ 241.
[15]    *Id.* at ¶ 242.
[16]    *Id.* at ¶ 243.
[17]    *Id.* at ¶ 246.

Finally, at paragraph 247 of his Complaint, Babul admits that Relmada agreed to this *compromise* and that the parties thereafter submitted it to the Court via the Stipulated Judgment.[18]

Thus, Babul's argument that the Stipulated Judgment provided him all the relief he was seeking in the Underlying Action is just plain false.

Apparently recognizing this, Babul next tries to argue that the Stipulated Judgment "provided [him] all the relief he *could possibly get*."[19] But this argument makes no sense. To begin with, it is an implicit admission that Babul sought more relief then he ultimately got. Moreover, even if the reason Babul decided to compromise his claims and end the Underlying Litigation by agreement was because he recognized (1) that the he was really not entitled to all the relief he was seeking, and (2) that the Stipulated Judgment provided him "all the relief he could possibly get," that does not change the fact that the Stipulated Judgment was still a compromise. It is clear what happened: Babul sought certain relief, and he agreed to less relief as part of a compromise to end the case. Whether that is because he realized he was overreaching, or wrong to begin with, is irrelevant.

In addition, Babul's argument that the Stipulated Judgment "provided [him] all the relief he could possibly get" is actually contradicted by his own Complaint. In support of this argument, Babul states that he "explained" in his Complaint that "the Court could not order Relmada to allow him to exercise the entire Warrant immediately because half of the Warrant was subject to an Escrow Agreement to which Laidlaw was also a party."[20] Then, based on this so-called "explanation," Babul argues that even though he asked for permission to exercise 100% of the Warrant, the fact that he was only permitted to exercise 50% was not really a compromise

---

[18] *Id.* at ¶ 247.
[19] *See,* Babul's Response Brief (Doc. 22), p. 9 (emphasis added).
[20] *Id.* at pp. 8-9 (citing ¶ 241 of his Complaint).

because that is "all the relief he could possibly get" under the circumstances.[21] The fatal flaw in this argument, however, is that Babul never "explained" – as he now claims – that there were reasons why he believed the Court could not grant him the right to immediately exercise 100% of the warrant (not in paragraph 241 of his Complaint, nor anywhere else).  On the contrary, the references in paragraph 241 to the reasons why 100% of the Warrant could not be immediately exercised are references to *Relmada's position* as to why "it could not agree that the Warrant could be exercised immediately…."[22] Moreover, Babul has actually alleged that he thought "Relmada's position was wrong" on this point.[23] In other words, Babul has always maintained – both in the Underlying Action and in this action – that he was entitled to exercise 100% of the Warrant.  And he maintained this position even when Relmada argued to the contrary.  Now, though, faced with the fact that his negotiated and agreed-to resolution of the Underlying Action dooms his current Dragonetti claim, he seeks to change his tune and adopt Relmada's position – the same position he has always alleged "was wrong."  This should not be countenanced; and it certainly is not sufficient to defeat Robinson Brog's Motion to Dismiss.

Despite his protestations to the contrary, the Stipulated Judgment did NOT provide Babul with all the relief he was seeking in the Underlying Action.  It was a compromise; and as such, it does not satisfy the favorable-termination element of his Dragonetti claim.

**B.    The Stipulated Judgment Is Considered A Settlement As A Matter Of Law.**

While the word "settlement" may not appear in the title of the Stipulated Judgment, there is no question that it is considered a settlement as a matter of law.  Indeed, courts both in Pennsylvania and around the county regularly refer to stipulated judgments or consent judgments

---

[21]    *Id.*
[22]    *See, Babul's Complaint* (Exhibit A to Robinson Brog's Motion to Dismiss), ¶ 241.
[23]    *Id.* at ¶ 242. *See also* ¶¶ 243 and 244 (setting forth reasons when Babul thought Babul's position was wrong).

as constituting or effectuating settlements.[24]  *See e.g., Jones Memorial Baptist Church v. Brackeen*, 416 Pa. 599 (Pa. 1965) (stating that "[a] consent decree is not a legal determination by the court of the matters in controversy but is merely *an agreement* between the parties…") (emphasis added); *Commonwealth by Fisher v. Phillip Morris,* 736 A.2d 693, 698 (Pa. Commw. Ct. 1999) (dissent) (noting that, just like a settlement, "in a stipulated judgment, or consent decree, litigants voluntarily terminate a lawsuit by assenting to specified terms, which the court agrees to enforce as a judgment");  *City of Phila. v. Benedetto*, 801 A.2d 1276, 1279 (Pa. Commw. Ct. 2002) (noting that "the action between the parties had ended, and the … [parties] now were parties to *a settlement agreement, i.e., the Stipulated Judgment*") (emphasis added); *Gradillas v. Lincoln Gen. Ins. Co.*, 2013 U.S. Dist. LEXIS 40585, 7-8 (N.D. Cal. Mar. 22, 2013) (holding that a statute providing for prejudgment interest when a judgment is entered in a greater amount than a prior offer of judgment was not applicable to a stipulated judgment because "*[e]ssentially, it was a settlement agreement*") (emphasis added); *New York City Dep't of Fin. v. Twin Rivers, Inc.*, 1999 U.S. App. LEXIS 11972 (2d Cir. N.Y. June 8, 1999) (stating that a "*consent judgment is a settlement agreement*") (emphasis added); *Sweetwater Valley Farm, Inc. v. Dean Foods Co. (In re Southeastern Milk Antitrust Litig.)*, 2011 U.S. Dist. LEXIS 76552 (E.D. Tenn. July 14, 2011) (noting that "entry of a *consent judgment [was] in compromise and settlement* of the government's claims") (emphasis added); and *United States v. Stinnett,* 318 F. Supp. 1337, 1338 (W.D. Okla. 1970) (describing a "consent judgment [as] based on *compromise and settlement* between the [parties]) (emphasis added).   This precedent belies Babul's arguments.

---

[24]   In addition, the Harvard Law Review previously dedicated an entire article to "The Consent Judgment as an Instrument of Compromise and Settlement." *See, Note, The Consent Judgment as an Instrument of Compromise and Settlement,* 72 Harv. L. Rev. 1314 (1959).

C.  **Even If The Stipulated Judgment Were Not Considered A "Settlement," That Does Not Matter Because It Was Still A Negotiated "Compromise" Or "Agreement" To End The Underlying Action In A Non-Litigious Manner.**

Even if one chose not to consider the Stipulated Judgment as a settlement,[25] Babul's allegations are still insufficient to satisfy the favorable-termination element of his Dragonetti claim. Despite what Babul suggests, it is not just "settlements" which fall short of meeting that element. Rather, under Pennsylvania law, *any* "withdrawal of proceedings *stemming from a compromise or agreement* does not, as a matter of law, constitute a termination favorable to the party against whom the proceedings have been brought originally…." *Chizmar v. Borough of Trafford,* 2011 U.S. Dist. Lexis 32644, 67-68 (W.D. Pa. 2011) (quoting *D'Elia v. Folino*, 933 A.2d 117, 122 (Pa. Super. 2007) (emphasis added). Put another way, "[a] *negotiated termination* of litigation … does not constitute a 'favorable termination.'" *Majorsky v. Douglas,* 58 A.3d 1250, 1269 (Pa. Super. 2012) (emphasis added). "When the parties to the underlying suit *jointly agree* to end the action, there is never a final determination of liability on the merits … [and][t]herefore, there is no 'favorable termination' within the meaning of [the Dragonetti Act]." *Zappala v. Eckert Seamans Cherin & Mellot, LLC,* 2011 Phila Ct. Com. Pl. Lexis 276, *2-4 (Pa. Com. Pl. 2011) (internal citations omitted) (emphasis added).[26]

---

[25] That would require ignoring both (1) the above-cited cases characterizing stipulated judgments and consent judgments as settlements, and (2) the fact that the Stipulated Judgment clearly was an agreement between the parties to amicably resolve their claims on terms which provided Babul with less relief than he was seeking from the Court (just like a settlement).

[26] Although Babul attempts to distinguish *Majorsky* and *D'Elia*, his attempts are unavailing. He argues that they do not apply because *D'Elia* involved a settlement agreement with mutual releases, and the underlying case in *Majorsky* ended "as part of a global settlement and consent verdict." *See,* Babul's Response Brief (Doc. 22), p. 7, fn. 3. But as discussed, the law as espoused by those cases is not limited just to factual situations involving "settlement agreements." They clearly provide that termination of underlying matters stemming from agreements, compromises or negotiations of the parties is *not* a "favorable termination." Further, despite what Babul implies, *Majorsky* did NOT involve a settlement agreement. *See,* 58 A.3d at 1255 (stating: "Most significantly …, **no settlement agreement or release was ever executed** between [the parties]") (emphasis added). Finally, there are other cases *not involving express settlements* in which Dragonetti claims have been dismissed for failure to meet the favorable-termination element. Indeed, in *Zappala,* the court, citing *D'Elia,* held that a voluntary dismissal – not a settlement – was not a favorable termination in part because it was "based upon a compromise between the parties." 2011 Phila Ct. Com. Pl. Lexis 276, * 3.

That is exactly the case here. Regardless of whether the Stipulated Judgment was a "settlement," there is no question that it was an *agreement* between the parties. Indeed, it says as much. And even if it did not, that is what a stipulation is. Moreover, as discussed above, the Stipulated Judgment represents a *compromise* of the claims at issue in the Underlying Action – a grant of judgment in favor of Babul on Relmada's claims in exchange for less relief than Babul was seeking on his counterclaims. Further, Babul's Complaint makes clear that the Stipulated Judgment constituted a *negotiated* termination of the Underlying Action.[27] The parties "worked together" to come up with agreeable terms, and although there was a "sticking point" concerning the relief Babul sought by his counterclaims, the parties ultimately compromised. Finally, there can be no dispute that the Stipulated Judgment was an agreement to end the Underlying Action without the need for further litigation – i.e., in a non-litigious manner. Thus, for all of these reasons, whether called a "settlement" or not, the Stipulated Judgment, by its very nature, does not constitute a "favorable termination" for purposes of Babul's Dragonetti claim.[28]

---

[27]  *See, See, Babul's Complaint* (Exhibit A to Robinson Brog's Motion to Dismiss), ¶¶ 238-247 (describing the parties efforts to "work together" to negotiate the terms of the Stipulated Judgment).  *See also,* Babul's Response Brief (Doc. 22), p. 4 (admitting that "[t]he parties worked together to come to an agreement about the terms of [the] proposed stipulated judgment").

[28]  Although Babul relies on *Bannar v. Miller*, 701 A.2d 242 (Pa. Super. 1997) in support of his position that the Stipulated Judgment was a "favorable termination" for purposes of his Dragonetti claim, *Bannar* is not applicable to this case. Unlike this case, *Bannar* did not involve an underling action that was terminated by a negotiated *agreement* or *compromise* of the parties. Instead, it involved a last-second, unilateral voluntary dismissal of the underlying action. That is not the case here at all. Here, the parties negotiated the terms of the Stipulated Judgment, and agreed to them. Moreover, also unlike this case, the last-second dismissal in *Bannar* was made "in the face of imminent defeat." *Id.* at 248. Thus, *Bannar* does not control here.

**D.      Babul Never Alleged That The Stipulated Judgment Was Not An "Agreement Or Compromise"; And In Any Event, The Court Need Not Accept As True Babul's Conclusory Allegations That It Was Not A "Settlement."**

Babul's next attempt to defeat the Motion to Dismiss is to argue that this Court must accept as true his allegation that the Stipulated Judgment "was not an agreement or compromise in the nature of a settlement".[29]  For a number of reasons, however, this argument fails as well.

First, despite what he now says, Babul never alleges that the Stipulated Judgment "was not an agreement or compromise."  What he alleges is that it was "not a settlement."[30]

Second, that is a conclusory allegation which the Court need not accept as true.[31]  Moreover, another reason that the Court need not accept it as true is it is actually contradicted by (1) the pleadings from the Underlying Action and the Stipulated Judgment, which show that the Stipulated Judgment was – just like a settlement – a compromised resolution of the claims in a non-litigious manner, and (2) Babul's own allegations, which show that the parties negotiated and agreed to the Stipulated Judgment as a compromise of their claims.[32]

Finally, even if this Court was obligated to and did accept as true Babul's allegation that the Stipulated Judgment was "not a settlement," that is not dispositive of whether he has alleged facts sufficient to satisfy the favorable-termination element.  He has not.  As discussed, even if the Stipulated Judgment were not a "settlement," the resolution of the Underlying Action could still fail meet the favorable-termination element if it stemmed from a compromise or agreement of the parties,[33] if it was a negotiated termination of the matter,[34] or if it was the result of a joint

---

[29] *See,* Babul's Response Brief (Doc. 22), p. 8.
[30] *See, Babul's Complaint* (Exhibit A to Robinson Brog's Motion to Dismiss), ¶ 238.
[31] *See, Sands v. McCormick*, 502 F.3d 263, 267-268 (3rd Cir. 2007)) (nothing that "a court need not credit a plaintiff's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss").
[32] *See, U.S. Claims,* 519 F. Supp. 2d at 520 (stating: "Nor must a court accept as true conclusory allegations contradicted by documents underlying the complaint").
[33] *See, Chizmar, supra*; and *D'Elia, supra.*
[34] *See, Majorsky, supra.*

agreement by the parties to end the matter in a non-litigious manner.[35] And again, that is exactly what happened here.

E. **Resolution Of Babul's Counterclaims In The Underlying Action Is Clearly Relevant To The Determination That Such Action Ended By Agreement Or Compromise Of The Parties.**

Babul's last attempt to rehabilitate his insufficient Dragonetti claim is to argue that the resolution of his counterclaims in the Underlying Action is irrelevant to whether he has sufficiently pleaded his Dragonetti claim.[36] This argument is flawed as well. While it cannot be denied that Dragonetti claims typically focus on the claims brought *against* the Dragonetti plaintiff in an underlying proceeding, that general truism does not mean that Babul's counterclaims are irrelevant to his Dragonetti claim under the circumstances present in this case. In fact, they are directly relevant to favorable-termination element.

As discussed, one thing that is directly relevant to that element is whether the underlying action terminated as a result of an agreement, compromise, or negotiations between the parties. And in this case, the resolution of Babul's counterclaims is very much a part of the circumstances which show that the Underlying Action was terminated in such a manner. As discussed, the Stipulated Judgment was a compromised termination which involved *all* the claims in the Underlying Action – both those asserted against Babul, and his counterclaims. It was a global resolution in which judgment was entered in Babul's favor on the claims against him in exchange for him getting less than he was seeking on his counterclaims. That was the agreement. That was the compromise. That was the resolution that the parties negotiated. And the resolution of Babul's counterclaims was definitely part of it. As a result, it is unquestionably relevant to his current Dragonetti claim.

---

[35] *See ,Zappala, supra*; *D'Elia,* 933 A.2d at 122-123; and *Majorsky, supra.*
[36] *See,* Babul's Response Brief (Doc. 22), p. 9.

### III.     CONCLUSION

Whether the Underlying Action was terminated in Babul's favor for purposes of his Dragonetti claim is a matter for the court to determine.  *Rosenfield v. Pennsylvania Automobile Insurance Plan*, 636 A.2d 1138 (Pa. Super. 1994).  Here, because the Stipulated Judgment was a negotiated agreement and compromise between the parties, this favorable-termination element is not met.  Thus, Defendants, Robinson Brog Leinwand Greene Genovese & Gluck P.C., David C. Burger, and David E. Danovich, respectfully request that this Honorable Court grant their Motion to Dismiss, and dismiss Babul's claims against them, with prejudice.

                                    Respectfully submitted,

                                    MARSHALL DENNEHEY WARNER
                                    COLEMAN & GOGGIN

                            By:     /s/ Gregory W. Fox
                                    Gregory W. Fox, Esquire
                                    PA. Identification No.  200846
                                    Jeremy Zacharias, Esquire
                                    PA Identification No. 318438

                                    2000 Market Street, Suite 2300
                                    Philadelphia, PA 19103
                                    (215) 575-2827
                                    *Attorneys for Robinson Brog Leinwand*
                                    *Greene Genovese & Gluck P.C., David C.*
                                    *Burger and David E. Danovich*

Date:  August 14, 2015

## CERTIFICATE OF SERVICE

I, Gregory W. Fox, hereby certify that on the date indicated below a copy of the foregoing Reply Brief, was served via electronic filing upon the following counsel for the parties.

William T. Hangley, Esquire
John S. Stapleton, Esquire
One Logan Square, 27th Floor
Philadelphia, PA 19103

Stephen G. Harvey, Esquire
David V. Dzara, Esquire
1880 JFK Blvd., Suite 1715
Philadelphia, PA 19103

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

By: /s/ Gregory W. Fox
Gregory W. Fox, Esquire
Identification No. 200846
2000 Market Street, Suite 2300
Philadelphia, PA 19103
(215) 575-2827