IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NAJIB BABUL, | : | |
| *Plaintiff,* | : | CIVIL ACTION NO. 2:15-CV-02937-GAM |
| v. | : | |
| | : | |
| RELMADA THERAPEUTICS, INC., a Delaware Corporation, RELMADA THERAPEUTICS, INC., a Nevada Corporation, LAIDLAW & COMPANY (UK) LTD., JAMESS CAPITAL GROUP, LLC, SANDESH SETH, SERGIO TRAVERSA, ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C., DAVID C. BURGER, and DAVID E. DANOVITCH, | : | |
| *Defendants.* | : | |

**RELMADA DEFENDANTS' PRELIMINARY MEMORANDUM
IN RESPONSE TO, AND
REQUEST TO PLACE UNDER SEAL,
PLAINTIFF'S MOTION TO SUPPLEMENT RELIEF SOUGHT IN THE PENDING
MOTION TO QUASH OR FOR A PROTECTIVE ORDER REGARDING FOUR
<u>SUBPOENAS SERVED BY THE RELMADA DEFENDANTS</u>**

**Introductory Statement:**

On Monday night, April 25, 2016, Plaintiff Najib Babul filed and served *Plaintiff's Motion To Supplement Relief Sought In The Pending Motion To Quash Or For A Protective Order Regarding Four Subpoenas Served By The Relmada Defendants* (the "Motion to Supplement"). On Tuesday morning, April 26, the Court informed counsel that, at the already scheduled hearing on Thursday, April 28, the Court intends to discuss all pending issues in the above-captioned matter on Thursday, including motions that are not fully briefed and issues raised via letter.

This Preliminary Memorandum is being filed for two purposes: First, to counter some scurrilous statements made publicly in Najib Babul's Motion to Supplement; and second, to request that Babul's Motion to Supplement be placed under seal and, if this is done, that this Memorandum also be placed under seal. Relmada Defendants do not intend this emergency filing to waive their usual right to respond to Babul's Motion to Supplement in accordance with the Federal Rules of Civil Procedure.

**Preliminary Memorandum:**

Najib Babul's attorney, Steven Harvey, tells us that, about two weeks ago, his client was accosted at his home and struck by an unknown assailant who supposedly said "drop the case" and threatened to kill Babul and his family. Apart from its very staginess, there are several curious aspects to Mr. Harvey's recitation:

1.   As I understand it, Mr. Harvey was not at the scene and, at best, is repeating as uncontestable fact a story he was told his client. Although he has had ample time in which to do so, Mr. Harvey has not supplied anything like actual evidence to show that this event actually happened. He has not presented an affidavit or declaration from Babul or anyone else in support of the story. (There are photographs of someone I assume to be Dr. Babul with what looks like a lesion on his forehead, but that's about it.) There is no police report, no hospital records, nothing. Nor, of course, has there yet been an opportunity to cross examine Babul (or for that matter Harvey) respecting the story as told and whatever incident it might relate to. This is not the appropriate occasion for recounting all the reasons why, as counsel for Relmada Defendants, we place little trust in statements of Dr. Babul relayed by his lawyer, but that is the unhappy fact.

    2. The accusations in the Motion to Supplement are highly speculative and hugely harmful to Sergio Traversa's and the other Relmada Defendants' reputations.  Readers of the Motion to Supplement, a public document, are not likely to consider the irrationality of Mr. Harvey's accusations, only the accusations.  As counsel for Relmada Defendants previously pointed out to Mr. Harvey (*see* Motion to Supplement, Exh. F), it is shockingly inappropriate of him to put such accusations in the public record with so little support for them.

    3. Logic is conspicuous by its absence from Mr. Harvey's construction of the "pattern" he perceives.  Let us review:

    a. More than two years ago, in January 2014, an unknown person sent Babul a copy of a *Pennsylvania Record* story reporting on the filing of the complaint in *Relmada v. Babul*.  The story itself is detached and factual, but the email "signature," whitecollarjail@mail.com, was offensive enough.  Relmada Defendants have denied authorship or responsibility for the document.

    b. Four months later, in May, 2014, Mr. Traversa sent Babul a text and a voicemail discussing a different subject – IRS reporting and taxes.  Traversa said he was being pressured to report the unaccounted-for $1.4 Million as compensation to Babul.  Of course, Babul would have serious IRS problems if it was ultimately determined that he had misappropriated the $1.4 Million in questionable expenses without reporting it as income or paying taxes.  Was that statement defamatory?  Of course not.  Was it an intentional infliction of emotional distress?  We are not very worried about that.

    c. Several days *later* (later is important here), someone using the nom de plume "Aunt Sally" sent Babul an email talking about a number of aspects of the litigation, including but not limited to the IRS reporting problem.  That document (whoever wrote it), like

the Traversa voicemail, is pretty thin soup for an intentional infliction claim; but more important, Mr. Harvey's perceived connection between that document and the Traversa voicemail/text is counterlogical.  Is it rational to suppose that Sergio Traversa sent a voicemail and text in his own name and then followed it up with an *anonymous* email discussing the same topic?  What sort of master criminal, seeking to avoid detection, begins by signing his name to the first communication?   This is the stuff of Woody Allen.

        d.       Fast forward two years:  Babul has obtained a victory; he has escaped having to do the accounting.  He has brought another lawsuit claiming damages to reputation and mental pain and suffering.  But he is resisting discovery.

        e.       Now, with discovery motions pending before the Court, Babul tells us that someone comes to his door, says "drop the case" and hits him.  How does that event connect to Mr. Traversa?  What logic tells us that a scientist/executive who left a voicemail about taxes in early 2014 is the likely sponsor of a mugging in 2016?

        4.       Mr. Harvey spends a lot of pages and paper trying to link Mr. Traversa to the other two emails from 2014.  The linkup does not work, and both Mr. Traversa and Mr. Seth deny any involvement with them.  But none of those documents, taken alone or together, would appear to support a cause of action against their authors, even if we knew who had written all of them, and even if they had all been written by the same person.

        5.       Perhaps most stunning of all is the absence of any logical connection between the vile accusations Mr. Harvey is making and the "remedy" he demands.  First, Mr. Harvey's claims about Mr. Babul's fears are surely exaggerated in the extreme:  If we were to believe what Mr. Harvey has told the Court, Babul's fear is that if he doesn't drop this case he will be killed.  But if Babul were all that frightened, he would surely never have permitted Mr.

Harvey to put 78 pages in the record publicly describing the alleged assault, publicly announcing that it had been reported to the authorities in California, and publicly demanding that the Court order an immediate inquiry aimed at identifying the miscreant. If the miscreant actually exists, and if he is paying attention to this case (as he must be, in Harvey's narrative), he might just be upset about these developments. Would it not have occurred to Mr. Harvey, at the very least, to file the Motion to Supplement under seal? The conduct and the rhetoric simply do not match up.

6.  On the other hand, it is difficult if not impossible to discern a rational connection between Babul's claimed fear of consequences and a third-party subpoena aimed at finding out what defamation-plaintiff Babul's reputation in his industry was and is, why he was fired from his most recent job, and similar facts. How, exactly, does a subpoena of his personnel file put Babul in danger?

7.  It should be remembered that it is Dr. Babul, not Relmada Defendants, who has opened his private affairs to scrutiny with his claims of damage to reputation and mental distress. Just as in any other lawsuit, Relmada Defendants and their attorneys need one another's assistance in understanding the claims and defenses and putting together their defense.

8.  Finally, the Motion to Supplement reflects a remarkable lack of proportion, of perspective. In the interest of keeping the people whom he has sued from learning the facts surrounding his own allegations because they might harm his reputation, Dr. Babul has thought nothing of savaging the reputations of Dr. Traversa and others. *That* is what is unfair.

The Motion to Supplement should be placed under seal, and should also be denied.

Respectfully Submitted,

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER

Dated: April 26, 2016                By:  /s/ William T. Hangley_____
William T. Hangley (I.D. No. 03533)
Michele D. Hangley (I.D. No. 82779)
David A. Solomon (I.D. No. 312401)
One Logan Square, 27th Floor
Philadelphia, PA 19103
Telephone:  (215) 568-6200

*Attorneys for Defendants Relmada Therapeutics, Inc., a Delaware Corporation, Relmada Therapeutics, Inc., a Nevada Corporation, Jamess Capital Group, LLC, Sandesh Seth, and Sergio Traversa*

## **CERTIFICATE OF SERVICE**

      I, William T. Hangley, certify that on this date I caused a true and correct copy of the attached document to be filed electronically using the Court's Electronic Case Filing System. These documents are available for viewing and downloading by all counsel of record.


Dated:  April 26, 2016                                        /s/ William T. Hangley